Good afternoon. So counsel, we're here for one case, Donald Trump v. United States. We're familiar with your briefs. We've read them. They're already cited in them. We've looked at the portions of the record that we need to review. So you have limited time this morning. You should feel free to get straight to the heart of your argument. We're probably going to have some questions. If the red light shines, I want you to be mindful of the red light. It's time to stop. But if you're finishing an answer to a question from the court, you can finish that answer without losing any rebuttal time for the side who has rebuttal time. So, Mr. Joshi. Thank you, Your Honor. May it please the court. Sophan Joshi for the government. The district court entered an injunction preventing the government from using documents that were lawfully seized pursuant to a lawfully issued warrant in the course of its criminal investigation. And that extraordinary judicial intrusion into a core executive branch function should be reversed for three reasons. One, the district court should not have exercised its equitable jurisdiction over the case to entertain plaintiff's motion in the first place, as I think the state panel in this case recognized. Second, we don't think plaintiff has demonstrated and can't demonstrate a likelihood of success on the merits to warrant the extraordinary injunction that was entered. And third, at all events, plaintiff hasn't demonstrated and can't demonstrate any irreparable injury that would warrant the extraordinary injunction. Now, I can first turn to the exercise of equitable discretion to entertain the plaintiff's motion in the first instance. As I think the state panel recognized. Is there any precedent for exercising equitable jurisdiction in a pre-indictment scenario where there's no showing that the seizure itself was unlawful? We have been unable to find a case in which that has happened, Your Honor. And I don't think plaintiff has identified one in his briefs either. And in a way, that makes sense because Rule 41, as you know, is a rule of federal criminal procedure. And so the natural place to raise that would be in some kind of criminal proceeding. And so this court, with the Fifth Circuit binding precedent, but other courts as well, including the Eighth Circuit, the Ninth, and others that we've cited in the briefs, have made clear that when someone is seeking the return of property pre-indictment, pre-initiation of any kind of criminal process, the appropriate way to view it is through this anomalous jurisdiction. And I think the adjective anomalous is important. It's supposed to be extraordinary. It's supposed to be rare. And for that reason, they have limited the availability and the exercise of discretion to cases where there is, I think the case is called a callous disregard for rights. And I think this court in binding precedent has recognized that. It seems to me the callous disregard for constitutional rights is a little more of a showing than just that it was an unlawful seizure. It could be debatable whether the seizure itself was unlawful. A callous disregard for constitutional rights is even a higher burden, I would think. My question was, has there ever been an exercise of this kind of jurisdiction where there's no showing that the seizure itself was unlawful? Not to my knowledge. We've been unable to find a case. Plaintiff has not cited a case, and I think that's a pretty good indication that perhaps no such case exists. Nor have we found a case in which this kind of anomalous jurisdiction was exercised where the plaintiff couldn't show a need for the return materials. Here, plaintiff hasn't even attempted to show a need for the return materials. And at all events, plaintiff now has all of the materials we see, except for the classified documents. Now, granted, copies of them, but he hasn't shown any need for the return in the first place, let alone a need for the originals as opposed to the copies. He just hasn't articulated it. Can I ask you a question about the callous disregard factor? Is that, we've said that that's an important factor. Is it dispositive? Must you always show to seek this anomalous jurisdiction a callous disregard of your rights? I think that's certainly what Chapman seems to suggest, and, of course, that's binding on the panel. Now, we recognize that other courts have looked at it and viewed it as a very, very important, perhaps the most important showing, but perhaps not dispositive. In this case, I don't think the panel needs to reach that question because plaintiff hasn't been able to show any of the factors under Ritchie. He hasn't shown, certainly with respect to the classified documents, which I think the State panel appropriately analyzed, but even with respect to the others, he either hasn't shown a personal interest in them, but even if he has, he has not even attempted to demonstrate a need for their return. And at all events, he already has copies of them returned to him already. What level, I tend to agree that your opponent hasn't really made much of an effort to show a specific need, but what level of need, what level of specificity, and what kind of things do you think a movement would need to show, use to show that they actually had a need for those documents? I think one of the examples that comes up in the case law in the notes is, for example, if a third party to a criminal proceeding has a search warrant executed to seize their property, and it might be something like a business record, but they have an ongoing business concern, so they need the business records in order to keep their business going during the pendency of the investigation. That might be, even if lawfully seized, set that factor aside, but that might be a case where you could show a need. But, of course, Rule 41 itself emphasizes that reasonableness is the touchstone, and if the government needs it in an investigation, then the continued retention of it is reasonable. That said, Rule 41 also recognizes, and the government fully accepts, that reasonable accommodation should be made. So if a plaintiff can show, can make the showing of the need in addition to the other factors, the government should, of course, attempt to accommodate that while also making sure the government can use it in its investigation, and the express text of Rule 41 says that. And here, again, I want to emphasize, plaintiff has now access to all of the documents except the classified ones. And what about adequate remedy? I think some of the cases in other circuits may go back and forth on whether a motion to suppress in an eventual criminal trial is an adequate remedy. Do you think that that will always be an adequate remedy, or are there some situations where that might not be? I think in a situation like this, we have to consider it an adequate remedy, because I gather that's what plaintiff wants in some of the filings he's made, perhaps not in this brief in this court, but in some of the other pleadings. He seemed to suggest that what he wants is not really the documents back. As I said, he already has them back. What he wants is to prevent the government from using the documents. And I'm not sure that that would ever be a valid justification. I think there the proper way, the proper remedy at law, would be in the criminal proceeding to file a motion to suppress, file a motion for use in, you know, derivative use suppression of the evidence, fruit of the poisonous tree. I mean, these are all doctrines that have been developed in the law to address exactly the concern Your Honor raised. And so I think that would be the adequate remedy. Now, I concede that, again, in a case where, let's say, a third party who just needs the documents back to, like, run his business or something like that, you know, then we would accept that a Rule 41 would be appropriate. But obviously we're very, very far away from that here in this case. I have a technical question. So your brief, and your reply brief especially, argued that the proper decretal language would be that we should reverse and remand with instructions to dismiss. It seemed to me that because this is an appeal from an injunction for purposes of is we would vacate the injunction, vacate this order, on the ground that there is a lack of equitable jurisdiction. But that would be it. What we would have jurisdiction over is not the entire case. We have jurisdiction if we have jurisdiction, right? If we have it, it's over that order, granting an injunction. Isn't that right? Technically, instead of reverse and remand with instructions, it's really just vacate. So I respectfully disagree, Judge Pryor. So obviously you do have jurisdiction that's common ground over the order, the September 5th order granting the injunction. Not the entire case, right? Well, so here's where I would point to Munaf against Guerin, a Supreme Court case that we cite in our brief, in which the court expressly says that on an interlocutory appeal from an injunction, the appellate court does have jurisdiction necessarily to address the merits, and if the merits are lacking, and the merits in this case includes the jurisdictional merits, the appellate court has the power to evaluate the motion to dismiss, even though that ordinarily wouldn't be appealable, and not only reverse the order under review, but remand with instructions to dismiss the case. It's really not reverse, though. It's vacate, isn't it? I suppose that's correct, although I think ordinarily vacate is exactly right. You would vacate that order so that the injunction is no longer binding. I think oftentimes you can reverse the order to make clear that you're not vacating for the purposes of, like, new factual findings or reevaluation of some factor. You're reversing on the ground that because there's no jurisdiction, there's actually no possibility of there ever being a valid entry of an injunction. Okay, so I will look at that case, and it would seem to me that if you're right, then what we're really talking about is a middle position. That is, I was right about vacate, but you're right about the authority to remand with instructions to dismiss. I mean, ordinarily if a district court lacks jurisdiction, that's what we do. We vacate and remand with instructions to dismiss, right? Fair enough, and I'm not going to fight you too hard on it. If what the language says is vacate and remand with instructions to dismiss the case, I think we would be perfectly happy with that outcome. And so what you're saying is we, in your view, if we decide that there was not equitable jurisdiction over this claim in the first place, we wouldn't need to go through any of the bases of jurisdiction for the injunction or the special master or anything like that. The dismissal of the lack of jurisdiction over the case as it was brought would resolve all the questions in your mind. Is that right? I think that's right because plaintiff filed this extraordinary motion to kick off these proceedings. It's not even a complaint. It's just a motion for judicial oversight of an executive branch investigation. And if you find, as we're urging you to, that underbinding circuit precedent, it was an abuse of discretion to exercise equitable jurisdiction over that motion, then that would resolve the entire case. That's exactly right. So just to be clear then, so that line of reasoning avoids the supplemental jurisdiction issue entirely? I believe it does, yes. But, of course, as we point out in our brief, if you do have to reach that issue, we think this is clearly and inextricably intertwined, as I think the State panel recognized with respect to the classified documents. Let's just say that we do have to reach the supplemental jurisdiction issue. What distinguishes this appointment of a special master from sort of the mine run of cases where a district court is evaluating a discovery dispute, something like that, and tells one side, don't look at these documents until somebody else has a chance to review them? What distinguishes this case from that? The entry of an injunction, right? It sounds like a formality, but it's actually a very real thing. We can be held in contempt for violating the injunction. And Congress has directed in 1292A that an injunction is something special. The Supreme Court held recently in the Taggart case that the word injunction brings with it the old soil and it brings with it all the common law backdrop of what an injunction is. So let me just give you just a hypothetical and just see what this means. So let's say I'm a district court and I'm adjudicating a dispute between two parties. It's an intellectual property dispute, okay, just a normal civil action. And there's a disclosure, an inadvertent disclosure of documents to the defendant by the plaintiff. And I tell the defendant, don't look at these documents. You are enjoined from looking at these documents until the third-party special master that I've appointed can review these documents and determine whether you're supposed to have them at all, whether they're privileged. Is that an appealable order? If I might. Yes, you may. You may answer. If an order is entered with an injunction and it uses that language, then yes, under the plain text of 1292A, that would be an appealable order. Okay. Thank you. You've saved three minutes for rebuttal, Mr. Trustee. May I please accord? My name is Jim Trustee. I represent the appellee. Pleasure to meet you. Your Honors, as to the issue of equitable jurisdiction, I think some context is necessary. I think that some actual process here needs to be described because I don't think that the appellant's briefing has fairly captured the thoughtfulness of the process established by Judge Gantt and where we are. You heard my question for your adversary. Are you aware, can you cite me a single decision by a federal court other than this one, where a federal court has exercised equitable jurisdiction in a pre-indictment scenario, reviewing a seizure where there's no showing that the seizure itself was unlawful? Not in the context of an immediate, fully formed motion that indicates that, in fact, we know this to be an unconstitutional seizure. I agree with the Court's premise that there's not case law. I would start with the broader premise, which is there's also not a situation in the history of this country where a sitting president authorized a raid of a presidential candidate's home. So we have some initial context. Do you think that raid is the right term for execution of a warrant? Or execution of a warrant. That's fine, Your Honor. I apologize for using a more loaded term. But what I would suggest is that Judge Cannon looked at the Ritchie factors, and she ruled, obviously, that in three cases, and I'm going to come back to the importance of callous disregard in a moment, exactly where that kind of fits in the scale. Well, it's the first factor, and she found that it wasn't satisfied, and your brief doesn't even attempt to argue that it was satisfied. Understood. And what that reflects, ultimately, Your Honor, is we're in a position where we're in a process that this judge has created. It is not prejudging that relief will be available in the grand scheme of things under Rule 41G, or under the Fourth Amendment. It is an initial moment of use of equitable powers to allow the parties to. . . It seems to me the entire premise of the exercise of this extraordinary kind of jurisdiction would be that the seizure itself is unlawful. And if you can't establish that, then what are we doing here?  That's exactly what this judge has contemplated, is not immediate protective pleadings where the attorneys file things and say, we think there's a Fourth Amendment violation. So you're saying that the end object here is to establish that it was an unlawful seizure? From our perspective, and we have good reason to think that there's now evidence of unlawful seizure, by way of this being a general warrant, by way of this being something that violates the Presidential Record Act, possibly. . . But, Your Honor, the point is how could we establish these things without even having access to the documents at first? We're talking about a moment in time where Judge Cannon acted with limited discretion, with a limited use of, obviously, a limited power, to establish a process where we could fully explore it instead of filing unbased motions claiming constitutional violations. I've not understood that to be the purpose, even the purpose that you all have articulated. You've asked for a special master to review the documents for privilege. That doesn't sound like an attempt to demonstrate that the seizure was unlawful. Well, it is a combination. We do not know, as we sit here today, what presentation was made by the affiant to obtain a warrant. There's still a whole universe of potential Franks-type challenges to the obtaining of this warrant from the magistrate. So we start with, yes, we exercise. . . There were 2,900 documents that were taken, most of which incredibly personal documents, photographs, thank you notes, birthday cards, golf shirts. We didn't know that at the time that we initially met with Judge Cannon. We knew there were concerns about the overreaching nature of this warrant, of the execution of this warrant, but we still don't know what's in the affidavit. Do you think it's rare for the target of a warrant to think that it's overreaching? I don't think that the target's position was particularly at issue here. It's the attorney's assessing the conduct of the FBI in taking part in this unprecedented raid. I'm sorry, search warrant execution. And the search warrant execution, which we were not allowed to be privy to, where they said, please turn off any video that would be showing it, was something that has been accompanied with public statements of transparency. The Attorney General having an unprecedented press conference to say, I want to release the warrant and I want to release the inventory, but nothing else. And our situation as the attorneys for the President saying, are we going to file some sort of protective Rule 41 claim without actually having evidence developed, or are we going to seek a process by which there is limited judicial oversight of the Department of Justice taking part in a historical event? And what this judge decided, in her use of discretion, was that even in the absence of callous disregard, that that did not completely control, that was not a predicate to the important use and the limited use of this anomalous power. It was one thing, but it was a factor. Under our precedent, was she allowed to make that decision, absent of showing callous disregard? I believe so, Your Honor. If you look at Hunsaker, you look at Ritchie, which firmly contemplates pre-indictment litigation to deal with either the return of property or suppression. That language is in Ritchie. If you look at Hunsaker, which basically, even in a civil context, basically says this is an available type of equitable authority, and it goes through the four factors established in Ritchie. There's also 11th Circuit case law, I believe the case is the 68,700 case, that basically says that in the context of equity, although we look at these four factors, even they are not exclusive. What do you make of Chapman? I think Chapman, I will say, Chapman uses the word foremost. So it certainly gives some elevation to callous disregard, but it cites Hunsaker in saying that. And it even cites page 34 of the Hunsaker opinion. It says this is where we get this notion from, of the elevated stature of callous disregard. You go to page 34, it's not there. So I'm not sure what was going on, how they kind of paraphrased foremost into citing something in Hunsaker that's not there. Well, he uses indispensable. Hunsaker refers to, I'm sorry, Chapman refers to the test as being indispensable, and I think later after saying it was foremost, graduates to indispensable like he said. I think it's a misread of Ritchie and Hunsaker for Chapman to kind of elevate it to that point. And I'm not suggesting that. Does it matter? I mean, if it's our circuit precedent, it binds us. I understand what the Court is saying. If the Court has, but again, we're talking about an extreme situation with the exercise of limited equitable jurisdiction by Judge Cannon. I think the fact that Chapman overstates the law for whatever reason, either an error or trying to make a move towards a more restrictive regime when it comes to equitable jurisdiction, I don't know. But it's clearly misstating the law when it describes Hunsaker standing for that proposition that it is a one-and-all. And there is still case law. There is no case that has ever said you can't consider other broader equitable concerns. And, in fact, that's what this judge did on page 11 of her order. She rattles off seven or eight very genuine concerns about faith in the criminal justice system. And that's really the— If you set aside, which I understand that you don't want to do, but if you do for the purposes of this question, set aside the fact that the target of the search warrant was a former president, are there any arguments that would be different than any defendant who— or any target of a warrant who wished to challenge a warrant before an indictment? Your Honor, what I would say is that we're not looking for special treatment for President Trump. We are recognizing there is a context here where no president has been— I don't know that that's particularly responsive. The question was set aside the fact that the subject of the warrant is the president. What's to distinguish this from any other subject of a criminal investigation? Other subjects of criminal investigations have the exact same Fourth Amendment rights as executed through Rule 41. Your answer is there is no difference. Correct. But what I would indicate is Rule 41 is the enforcement mechanism for any civilian, any citizen's Fourth Amendment complaints or violations. Now, maybe the difference in this case is that we didn't come to the table and immediately announce that we have, you know, the following grounds for suppression. There's no real secret we've had concerns about whether it's a general warrant. There's no real secret that we have concerns about the Presidential Records Act and that there's executive privilege. It might be a secret to this record. I mean, I don't see where that argument or case has been made. So for our purposes, it sounds like a secret. Your Honor, what I would indicate, and again, I think that the briefing distorts the process a little bit. This is a judge who's giving us an opportunity. She is initially creating a carve-out of limited equitable jurisdiction for us to explore whether or not there's a valid claim. The case could fizzle out in a couple of different ways. It could fizzle out with the court saying I've seen the Rule 41 pleading and I'm no longer exercising equitable jurisdiction because you have no claim. It could fizzle out with attorneys looking at it and saying we are no different than anybody else in the world and we can't come up with a basis. But the problem is we have to determine when it's proper for a district court to do this in the first place, which is what we're looking at now. And the last question was one posed that makes clear that basically, other than the fact that this involves a former president, everything else about this is indistinguishable from any pre-indictment search warrant. And we've got to be concerned about the precedent that we would create that would allow any target of a federal criminal investigation to go into a district court and to have a district court entertain this kind of petition, exercise equitable jurisdiction, and interfere with the executive branch's ongoing investigation. But John, the greater context of this case, and again, it's not special treatment. It's just basic facts of where we are. This is a situation where a political rival has been subjected to a search warrant where thousands of personal materials have been taken. We can't ignore that in the context of equity, which considers certain things, such as the impact on the community when it comes to their view of the criminal justice system. And again, it ignores. I understand there's an end point that's a concern. We don't want to open up floodgates. It's not just the end point. It's the beginning point. And you've talked about all these other records and property that were seized. The problem is the search warrant was for classified documents and boxes and other items that are intermingled with that. I don't think it's necessarily the fault of the government if someone has intermingled classified documents in all kinds of other personal property. Actually, the warrant goes on to allow for authorization to search any materials in the vicinity of those commingled items. So this was carte blanche. This is why they took golf shirts and pictures of Celine Dion and things that were pre-presidential and things that were post-presidential. The reason they did that, from how we look at it at this point, is because they had carte blanche from a magistrate to do a general warrant. It required no real discretion in their seizures. So there is a viable, initial Fourth Amendment concern. The reason that's not on the table is by design, which is this court said let's go through the process. Let's identify documents that might have issues. Let's identify whether there are theories to pursue from the appellant's side. Here's why I didn't see anything like that was in an argument from you all that this search was undertaken in a callous disregard of the target's rights. Right. I understand we are kind of stuck with the record from September 5th, which was when the judge made a finding that there was not a callous disregard. My starting point is things have changed. And you haven't challenged it. We were not in a position to challenge it at that point. Because you hadn't made a record that would allow for a challenge for it. Right. And what this vehicle has done in extremely unusual circumstances, because I don't think that a ruling allowing the limited discretion of appointing a special master to sift through documents and entertain a rule 41, there's an injunction on the government's use of the documents, right? I mean, it's not necessarily the special master appointment, but it's the fact that the government hasn't been enjoined from using the materials that it collected pursuant to a search warrant. And the injunction, frankly, is almost the most overblown part of the litigation. Because from the government's side, when you just step back and think about this, they had 100 or so classified documents. They indicated we want to be able to continue our investigation. Okay. That was allowed through the stay. So they lost very little time on the stay based on that. We're talking about whether there's somehow prejudice in building whatever case you're trying to build by not having access to the Celine Dion photos, the thank you notes, the other things. I mean, it is not realistic for the government to complain that this has hobbled their ability to investigate. They've had months before the seizure, months after. They know what's in that collection of items that were seized. They've even just recently appointed a special prosecutor, which generally means it's not going to be resolved in the next couple of days. So the prejudice is so overstated. Now, it's not to say that you don't have jurisdiction to talk about the injunction, that you don't have the ability to even overturn the injunction. But there's literally no harm to the government from not being able to access those documents. And so if this court reaches a conclusion that the injunction – I'm sorry, I see I'm out of time, but if I can just finish the answer. You're answering a question from the court. Thank you. You know, if the injunction is the heart of this court's involvement, then we're all going to be able to live with it. But what we're trying to prevent is the amputation of a thoughtful process based on some of the factors in Ritchie which is not exclusive under the 11th Circuit and other factors articulated by this judge that allow for this incredibly unusual case to permit that limited moment. And the problem is she may reject jurisdiction at the end. The problem with all of that, though, is that you view the injunction as the most overblown part of this. But think of the extraordinary nature from our perspective of an injunction against the executive branch in a pre-indictment situation. Under the separation of powers, the judiciary doesn't interfere with those kinds of prosecutorial and investigatorial decisions, right? I understand. The whole nature of this kind of jurisdiction is it has to be extraordinary, which is why I was asking, are you aware of any authority where it's ever exercised where there's not at least an initial showing that the seizure itself was unlawful? My answer to that, Your Honor, is simply this is an extraordinary case to start with. It is deep in the process of using the special master to resolve these issues with a hearing in nine days and a scheduling deadline of filing in Rule 41 by the middle of December. That net effect is maybe 100 days of delay to the executive branch when it comes to the access of literally the 2,900 mostly personal types of documents. The harm is little. The hesitation is completely understandable in terms of creating precedent that allows for injunctive relief to freeze the government in its tracks. I understand that. I would just suggest that equity, you know, the good and the bad of equity is that it has flexibility to address the problems at the table. My final point on that is simply that we're in a position where we could not, in good faith, file all of the things that might ultimately be filed without developing a record, and that's what's happened since September 5th. Can I ask you a question about the timing? Sure. So you laid out a little bit about the timing leading up to this moment. What is going to happen going forward with the special master's review? And I guess to put a point on this, when would this appeal of the injunction be mooted? When could it be mooted by something that would happen in the underlying special master review or litigation in front of the judge? So the special master has summoned us to Brooklyn again on December 1st. It's called a status conference, but that basically means a resolution of the remaining documents. We have about 2,900 documents. We're down to, I think, 930 where we disagree. But big swaths of that will be decided with a legal ruling rather than kind of a one-by-one look at the document. So I think that that's... Where you say you disagree, where you disagree about what? Whether or not executive privilege applies, whether or not attorney-client applies on one document, whether something can be deemed personal or presidential. And I understand some of that doesn't affect trial usage, but some of it will affect access by the trial team. Judge Cannon set a tight deadline for Judge Deery to make reports and recommendations by December 16th. So my understanding is right around late December is when you'd have resolution of all these documents. I hope that answers Judge Bradshaw's question. Thank you. Sorry, if there's no other questions, I'll step down. Okay, thank you. Roberto? Thank you, Your Honors. Just a few very quick points. First, as to the timeline and delay, I just want to make clear that, yes, Judge Deery should be issuing his final recommendation in the middle of next month. But, of course, then parties will lodge objections before the district court. Presumably there will be more briefing on that, perhaps an argument, then a decision. And then, of course, I assume the agreed party would have a strong incentive to appeal to this court, and then we'll be right back here. But that could take many, many months. And I can't do better than Justice Frankfurter in Cobbledick in which he said, you know, delay is fatal to the vindication of the criminal law. And I think that applies in spades over here. As far as the irreparable injury from the injunction, remember we're on an appeal from a PI granted in plaintiff's favor. And so it's really, it was plaintiff's burden to show irreparable injury, and he has still yet to show exactly what injury he suffers from the lack of return of the documents. And as I keep emphasizing, he's had the documents, or at least copies of all of them, returned to him, except for the classified ones, of course. What do you say about the argument that your friend on the other side of the case just made about this being a general warrant? I couldn't disagree more. I know plaintiff emphasizes that he just wants judicial oversight of this. But remember, we've had judicial oversight, and we've had exactly the judicial oversight that the Fourth Amendment and the Supreme Court have called for, which is we have a neutral magistrate judge in Article III who reviewed the affidavit and then issued a search warrant based on that. The search warrant described the places to be searched with particularity, the office and the storage room. It described the items to be seized with particularity. And those are exactly the items that we seized. The detailed property inventory is in the record, Document 116-1. It shows 33 boxes of items that were taken, 7 from the office, 26 from the storage room. And that's exactly what we seized. To me, I haven't had as much familiarity with the case as my colleagues here, but it seemed to me that that was also a new argument. Yes, I think that's exactly right. And that was the second point I was going to mention is this really has been shifting sands of the argument. I think before Judge Cannon, when the motion was filed, the initial claim was, well, attorney-client privilege in all the cases, and that's what Judge Cannon described, you know, attorney-client privilege. And then executive privilege was introduced, even though I'm not sure why that would preclude our use of the executive branch's own use of the documents in an investigation. And then before the Supreme Court, a plaintiff then described the core of the dispute, is what he told the Supreme Court, was whether the classified documents had been declassified. Then in this court, in his brief on appeal, for the first time we see this big dispute over the PRA, whether it's presidential or personal, which hadn't been raised before. And now today at argument, I hear about a Franks hearing, which is the first time I've heard it in these appellate papers anyway. So I think in general, this just sort of emphasizes how anomalous and extraordinary what the district court did here was. And I heard Mr. Trustee agree that there was no difference between this and other defendants. And I think that just emphasizes how the anomalous could become commonplace, and we think the court should reverse. Thank you. We are adjourned. It was well-argued by both sides and very helpful. Thank you. All rise.